**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

ELAINE WANG,                                   :
                                               :
         Plaintiff,                            :   Civil Action No. 1:21-cv-2095
                                               :
v.                                             :   **COMPLAINT FOR VIOLATIONS OF**
                                               :   **SECTIONS 14(a) AND 20(a) OF THE**
ALEXION PHARMACEUTICALS, INC.,                 :   **SECURITIES EXCHANGE ACT OF**
DAVID R. BRENNAN, CHRISTOPHER J.               :   **1934**
COUGHLIN, DEBROAH DUNSIRE, M.D.,               :
PAUL A. FRIEDMAN, M.D., LUDWIG N.              :   **JURY TRIAL DEMANDED**
HANTSON, Ph.D., JOHN T. MOLLEN,                :
FRANCOIS NADER, M.D., JUDITH A.                :
REINSDORF, J.D. and ANDREAS                    :
RUMMELT, Ph.D.,                                :
                                               :
         Defendants.                           :
--------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Alexion, Inc., ("Alexion or the

"Company") and the members Alexion's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed merger between Alexion and AstraZeneca PLC and its affiliates ("AstraZeneca").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form F-4 (the

"Registration Statement") to be filed on February 19, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Delta Omega Sub Holdings Inc. I ("Merger Sub I"), a wholly owned subsidiary of AstraZeneca, will merge with and into Alexion with Alexion surviving as a wholly owned subsidiary of Delta Omega Sub Holdings Inc., a wholly owned subsidiary of AstraZeneca ("BidCo"), and (ii) immediately following the effective time of the first merger, Alexion will merge with and into Delta Omega Sub Holdings LLC 2 ("Merger II") with Merger Sub II surviving the second merger as a direct wholly owned subsidiary of Bidco and an indict wholly owned subsidary of AstraZeneca (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Alexion stockholder will receive: (i) 2.1243 AstraZeneca America Depository Shares ("ADRs") and (ii) $60.00 in cash for each share of Alexion stock owned (the "Merger Consideration").

3.      As discussed below, Defendants have asked Alexion's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor BofA Securities ("BofA") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Alexion's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

<strong>JURISDICTION AND VENUE</strong>

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District.

<strong>PARTIES</strong>

9.     Plaintiff is, and has been at all relevant times, the owner of Alexion stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant David R. Brennan has served as a member of the Board since July 2014 and is the Chairman of the Board and was the Interim Chief Executive Officer of the Company from December 2016 to March 2017.

11.     Individual Defendant Christopher J. Coughlin has served as a member of the Board since July 2014.

12.     Individual Defendant Deborah Dunsire, M.D. has served as a member of the Board since January 2018.

13.     Individual Defendant Paul A. Friedman, M.D. has served as a member of the Board since September 2017.

14.     Individual Defendant Ludwig N. Hantson, Ph.D. has served as a member of the Board since April 2014 and is the Chief Executive Officer of the Company.

15.     Individual Defendant John T. Mollen has served as a member of the Board since 1995.

16.     Individual Defendant Francois Nader, M.D. has served as a member of the Board since November 2017.

17.     Individual Defendant Judith A. Reinsdorf, J.D. has served as a member of the Board since February 2018.

18.     Individual Defendant Andreas Rummelt, Ph.D. has served as a member of the Board since February 2010.

19.     Individual Defendant Michael W. Upchurch has served as a member of the Board since February 2019.

20.     Individual Defendant Kelly Williams has served as a member of the Board, President, and Chief Executive Officer since October 2019.

21.     Defendant Alexion is a Delaware corporation and maintains its principal offices at 121 Seaport Blvd., Boston Massachusetts 02210.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "ALXN."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23.     The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

24.     Alexion develops and commercializes various therapeutic products. The Company offers ULTOMIRIS for the treatment of paroxysmal nocturnal hemoglobinuria (PNH) and atypical hemolytic uremic syndrome (aHUS); and SOLIRIS for the treatment of PNH, aHUS, generalized myasthenia gravis (gMG), and neuromyelitis optica spectrum disorder (NMOSD). It also provides Strensiq for patients with hypophosphatasia; Kanuma (sebelipase alfa) for the treatment of patients with lysosomal acid lipase deficiency; and Andexxa, a reversal agent for patients treated with rivaroxaban or apixaban. In addition, the Company is developing ALXN1210 (Intravenous) that is in Phase III clinical trials for the treatment of gMG, NMOSD, ALS, COVID-19, and HSCT-TMA; ALXN1210 (Subcutaneous), which is in Phase III clinical trials for PNH and aHUS; ALXN1820 that is in Phase I clinical trial, a therapeutic antagonist of properdin; and ALXN1720, which is in Phase I clinical trial for the treatment of disease states involving dysregulated terminal complement activity. Further, it is developing ALXN1840 that is in Phase III clinical trials for the treatment of Wilson disease; ALXN1830, which are in Phase I clinical trials for neonatal Fc receptor; ALXN2040 and ALXN2050 to treat diseases associated with dysregulation of the complement alternative pathway; ALXN1850, an enzyme replacement therapy; ALXN2060 for treating transthyretin amyloidosis; and ALXN2075 for treatment of relapsed/refractory chronic lymphocytic leukemia. The company serves distributors, pharmacies, hospital, hospital buying groups, and other healthcare providers in the United States and internationally. Alexion has

collaboration and license agreement with Halozyme Therapeutics, Inc.; and agreements with Dicerna Pharmaceuticals, Inc., Zealand Pharma A/S, Caelum Biosciences, Inc., Stealth BioTherapeutics Corp., and Affibody AB. The Company was founded in 1992 and is headquartered in Boston, Massachusetts.

25.     On December 12, 2020, the Company and AstraZeneca jointly announced the Proposed Transaction:

> AstraZeneca and Alexion Pharmaceuticals, Inc. (Alexion) have entered into a definitive agreement for AstraZeneca to acquire Alexion.
>
> Alexion shareholders will receive $60 in cash and 2.1243 AstraZeneca American Depositary Shares (ADSs) (each ADS representing one-half of one (1/2) ordinary share of AstraZeneca, as evidenced by American Depositary Receipts (ADRs)) for each Alexion share. Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.
>
> The boards of directors of both companies have unanimously approved the acquisition. Subject to receipt of regulatory clearances and approval by shareholders of both companies, the acquisition is expected to close in Q3 2021, and upon completion, Alexion shareholders will own c.15% of the combined company.
>
> Pascal Soriot, Chief Executive Officer, AstraZeneca, said: "Alexion has established itself as a leader in complement biology, bringing life-changing benefits to patients with rare diseases. This acquisition allows us to enhance our presence in immunology. We look forward to welcoming our new colleagues at Alexion so that we can together build on our combined expertise in immunology and precision medicines to drive innovation that delivers life-changing medicines for more patients."
>
> Ludwig Hantson, Ph.D., Chief Executive Officer, Alexion, said: "For nearly 30 years Alexion has worked to develop and deliver transformative medicines to patients around the world with rare and devastating diseases. I am incredibly proud of what our organisation has accomplished and am grateful to our employees for their contributions. This transaction marks the start of an exciting new chapter for Alexion. We bring to AstraZeneca a strong portfolio, innovative rare disease pipeline, a talented global workforce and strong manufacturing capabilities in biologics. We remain committed to continuing to serve the patients who rely on our medicines and firmly believe the combined

organisation will be well positioned to accelerate innovation and deliver enhanced value for our shareholders, patients and the rare disease communities."

**Strategic rationale**

Both companies share the same dedication to science and innovation to deliver life-changing medicines. The capabilities of both organisations will create a company with great strengths across a range of technology platforms, with the ability to bring innovative medicines to millions of people worldwide. The combined company will also have an enhanced global footprint and broad coverage across primary, speciality and highly specialised care.

<u>Scientific leadership - accelerated presence in immunology</u>

AstraZeneca has built a growing scientific presence in oncology, and in cardiovascular, renal and metabolism, and respiratory diseases, with a focus on organ protection. AstraZeneca has developed a broad range of technologies, initially focused on small molecules and biologics and with a growing focus in precision medicine, genomics, oligonucleotides and epigenetics. More recently, AstraZeneca has increased its efforts in immunology research and the development of medicines for immune-mediated diseases.

Alexion has pioneered complement inhibition for a broad spectrum of immune-mediated rare diseases caused by uncontrolled activation of the complement system, a vital part of the immune system. Alexion's franchise includes *Soliris* (eculizumab), a first-in-class anti-complement component 5 (C5) monoclonal antibody. The medicine is approved in many countries for the treatment of patients with paroxysmal nocturnal haemoglobinuria (PNH), atypical haemolytic uremic syndrome, generalized myasthenia gravis and neuromyelitis optica spectrum disorder. More recently, Alexion launched *Ultomiris* (ravulizumab), a second-generation C5 monoclonal antibody with a more convenient dosing regimen.

Alexion's immunology expertise extends to other targets in the complement cascade beyond C5 as well as additional modalities, with its deep pipeline including Factor D small-molecule inhibitors of the alternative pathway of the complement system, an antibody blocking neonatal Fc receptor (FcRn)-mediated recycling, and a bi-specific mini-body targeting C5, among others. The FcRn extends the half-life and hence the availability of pathogenic immunoglobulin G (IgG) antibodies.

AstraZeneca, with Alexion's R&D team, will work to build on Alexion's pipeline of 11 molecules across more than 20 clinical-development programmes across the spectrum of indications, in rare diseases and beyond.

Alexion's leading expertise in complement biology will accelerate AstraZeneca's growing presence in immunology. The acquisition adds a new technology platform to AstraZeneca's science and innovation-driven strategy. The complement cascade is pivotal to the innate immune system. It plays a crucial role in many inflammatory and autoimmune diseases across multiple therapy areas, including haematology, nephrology, neurology, metabolic disorders, cardiology, ophthalmology and acute care. In contrast, AstraZeneca's capabilities in genomics, precision medicine and oligonucleotides can be leveraged to develop medicines targeting less-frequent diseases. Combining AstraZeneca's capabilities in precision medicine and Alexion's expertise in rare-disease development and commercialisation will enable the new company to develop a portfolio of medicines addressing the large unmet needs of patients suffering from rare diseases.

The combined companies will bring together two rapidly converging, patient-centric models of care delivery with combined strengths in immunology, biologics, genomics and oligonucleotides to drive future medicine innovation. AstraZeneca intends to establish Boston, Massachusetts, US as its headquarters for rare diseases, capitalising on talent in the greater Boston area.

<u>Industry-leading revenue growth; enhanced geographical presence and broad coverage across primary, specialised and highly specialised care</u>

AstraZeneca's acquisition of Alexion, with its strong commercial portfolio and robust pipeline, will support its long-term ambition to develop novel medicines in areas of immunology with high unmet medical needs. Alexion achieved impressive revenue growth over the last few years, with revenues of $5.0bn in 2019 (21% year-on-year growth). Alexion has exhibited skilful commercial execution in building its 'blockbuster' C5 franchise. The success of the franchise is demonstrated by the effective transition of over 70% of PNH patients from *Soliris* to *Ultomiris* in less than two years of launch in its key markets, including the US, Japan and Germany, as well as the strong pipeline of additional indications for *Ultomiris*.

Rare diseases is a high-growth therapy area with rapid innovation and significant unmet medical need. Over 7,000 rare diseases are known today, and only c.5% have US Food and Drug Administration-approved treatments.[1] The global rare disease market is forecasted to grow by a low double digit percentage in the future.[2]

AstraZeneca intends to build on its geographical footprint and extensive emerging markets presence to accelerate the worldwide expansion of Alexion's portfolio.

The two companies have been on converging paths, AstraZeneca expanding its presence from primary to speciality care, whereas Alexion has been progressing from ultra-orphan to orphan and speciality conditions.

The acquisition strengthens AstraZeneca's industry-leading growth, underpinned by its broad portfolio of medicines, which will enable the new company to bring innovative medicines to a broad range of healthcare practitioners in primary, speciality and highly specialised care.

The combined company is expected to deliver double-digit average annual revenue growth through 2025.

**Financial benefits**

<u>Enhanced revenue growth, operating margin and cash-flow generation</u>

The acquisition is expected to improve the combined Group's profitability, with the core operating margin significantly enhanced in the short term, and with continued expansion thereafter. This uplift is supported by increased scale and expected recurring run-rate pre-tax synergies of c.$500m per year from the combined Group (by end of the third year following completion of the acquisition). AstraZeneca expects to generate significant value from the acquisition by extending Alexion's commercial reach through leveraging AstraZeneca's global presence and accelerating the development of Alexion's pipeline.

The acquisition also strengthens AstraZeneca's cash-flow generation, providing additional flexibility to reinvest in R&D and rapid debt reduction, with an ambition to increase the dividend.

<u>Immediately earnings-accretive and value-enhancing acquisition, in line with stated capital-allocation priorities</u>

The acquisition is expected to deliver robust and sustainable accretion to AstraZeneca's core earnings per share (EPS) from the outset, with double-digit percentage accretion anticipated in the first three years following the completion of the acquisition.

The acquisition of Alexion is consistent with AstraZeneca's capital-allocation priorities. The combined company is expected to maintain a strong, investment-grade credit rating, and the acquisition supports AstraZeneca's progressive dividend policy. The combination represents a significant step in AstraZeneca's strategic and financial-growth plans.

\* \* \*

**Details of the acquisition**

<u>Key terms</u>

The acquisition will be undertaken through a US statutory merger in which Alexion shareholders will receive $60 in cash and 2.1243 new AstraZeneca ADSs listed on the Nasdaq exchange for each of their Alexion shares. The cash and ADS consideration represents an c.45% premium to Alexion shareholders based on the closing stock price of Alexion on 11 December 2020 and a c.43% premium, based on the 30-day volume-weighted average closing stock price of $122.04 before this announcement. If they elect, Alexion shareholders may receive their allocation of AstraZeneca ADSs in the form of a corresponding number of ordinary shares of AstraZeneca in addition to the cash consideration.

Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.

<u>Financing</u>

To support the financing of the offer consideration, AstraZeneca has entered into a new committed $17.5bn bridge-financing facility, provided by Morgan Stanley, J.P. Morgan Securities plc and Goldman Sachs. The bridge-financing facility is available for an initial term of 12 months from the earlier of the date of completion of the acquisition and 12 December 2021 with up to two six-month extensions available at the discretion of AstraZeneca. The initial bridge financing facility is intended to cover the financing of the cash portion of the acquisition consideration and associated acquisition costs and to refinance the existing term loan and revolving credit facilities of Alexion. In due course, AstraZeneca intends to refinance the initial bridge-financing facility through a combination of new medium-term bank loan facilities, debt-capital market issuances and business cash flows.

The acquisition is expected to significantly enhance cash generation, which will support rapid debt reduction and overall deleveraging. AstraZeneca remains committed to maintaining a strong investment-grade credit rating. The dividend policy remains unchanged with a commitment to a progressive dividend policy; dividend cover is expected to be materially enhanced as a result of the acquisition.

<u>Further information on synergies</u>

The acquisition is expected to realise recurring run-rate pre-tax synergies of c.$500m per year from the combined Group, generated from commercial and manufacturing efficiencies as well as savings in central costs, with full run-rate expected to be achieved by end of the third year following completion of the acquisition.

To realise the total synergies, AstraZeneca expects to incur one-time cash costs of c.$650m, during the first three years following completion.

<u>Management and employees</u>

Members of Alexion's current senior management team will lead the future rare-disease activities. Under the terms of the acquisition agreement, AstraZeneca has agreed that for 12 months following closing, it will provide the Alexion employees with the same level of salary as such employees had before closing, incentive compensation opportunities that are in the aggregate no less favourable than those provided before closing and substantially comparable benefits to those provided before closing.

<u>Governance</u>

The companies will mutually agree on two individuals from the Alexion board of directors who will join the AstraZeneca board as directors upon closing of the acquisition.

<u>Closing conditions</u>

Closing of the acquisition is subject to approval by AstraZeneca and Alexion shareholders, certain regulatory approvals, approval of the new AstraZeneca shares for listing with the Financial Conduct Authority and to trading on the London Stock Exchange, and other customary closing conditions.

The acquisition is a Class 1 transaction for AstraZeneca and as such, will require the approval of its shareholders to comply with the UK Listing Rules. A shareholder circular, together with notice of the relevant shareholder meeting, will be distributed to shareholders in the first half of 2021. The Alexion proxy statement is also expected to be published in the first half of 2021.

Subject to the satisfaction of the closing conditions to the proposed acquisition, the companies expect the acquisition to close in Q3 2021.

<u>Termination</u>

The acquisition terms provide that Alexion will be liable to pay a break fee of up to $1.2bn to AstraZeneca in certain specified circumstances (including a change of Alexion's board recommendation or completion of an alternative acquisition). AstraZeneca will also be required to pay Alexion a break fee of $1.4bn in certain specified circumstances, including a change of AstraZeneca's board recommendation.

<u>Recommendation</u>

The boards of directors of both Alexion and AstraZeneca have unanimously approved the proposed acquisition and resolved to recommend that their respective shareholders vote in favour of it.

Advisors to AstraZeneca

Evercore Partners International LLP ("Evercore"), and Centerview Partners UK LLP ("Centerview Partners") are acting as lead financial advisers. Ondra LLP ("Ondra") are providing advice as part of their ongoing financial advisory services. Morgan Stanley & Co. International plc ("Morgan Stanley") and Morgan Stanley Bank International Limited and J.P. Morgan are acting as financial advisors and lead debt financing underwriters. Goldman Sachs Bank USA is acting as lead debt financing underwriter. Morgan Stanley and Goldman Sachs International are joint corporate brokers. Evercore is acting as sponsor in relation to the transaction described in this announcement. Freshfields Bruckhaus Deringer is acting as legal counsel.

Advisors to Alexion

Bank of America Securities is serving as financial advisor to Alexion, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

* * *

26.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Alexion's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

27.    On February 19, 2021 Alexion and AstraZeneca jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28.    The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "AstraZeneca Projections") and provided them to the Board, BofA, AstraZeneca, and AstraZeneca's financial advisors by management of Alexion with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29.    For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-GAAP Operating Income (Post-SBC); Tax-Effected EBIT, Unlevered Free Cash Flow, Non-GAAP EPS (Pre-SBC), and Non-GAAP Net Income, but fails to provide line items used to calculate these metrics or a

reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30.    For the AstraZeneca Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Core EBIT, Unlevered Free Cash Flow, and Core EPS, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

31.    When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

32.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

33.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses of Alexion*

34.     With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by BofA in the analysis.

35.     With respect to BofA's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by BofA in the analysis.

36.     With respect to BofA's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of implied present values per share of Alexion common stock Alexion is expected to generate over the period from September 30, 2020 through December 31, 2040; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2020 through 2040; (iii) the inputs and assumptions underlying the discount rates ranging from 7.0% to 9.5%; (iv) the net debt of the Company as of September 30, 2020; and (v) the number of fully diluted outstanding of Alexion common stock.

37.     With respect to BofA's *Discounted Cash Flow Analysis Sensitivity Analysis*, the Registration Statement fails to disclose: (i) the basis for the price decreases for the drugs ANDEXXA pricing, ULTOMIRIS pricing, and combined ANDEXXA & ULTOMIRIS pricing;

and (ii) the inputs and assumptions underlying the illustrative discount rates ranging from 8.0% to 10.5%.

38.     With respect to BofA's *Premia Paid Anlaysis*, the Proxy Statement fails to disclose the premia paid in each of the acquisitions observed by BofA; and the actual acquisitions reviewed by BofA.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses of AstraZeneca*

39.     With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by BofA in the analysis.

40.     With respect to BofA's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of implied present values per share of AstraZeneca ADS AstraZeneca is expected to generate over the period from September 30, 2020 through December 31, 2030; (ii) AstraZeneca's projected unlevered free cash flows for fiscal years 2020 through 2030 and all line items used to calculate these figures; (iii) the inputs and assumptions underlying the use of the range of perpetuity growth rate of negate 3.0% to positive 1.0%; (iv) the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.5%; (v) the net debt of AstraZeneca as of September 30, 2020; (vi) the number of fully diluted AstraZeneca ordinary shares outstanding; (vii) the terminal values for AstraZeneca.

41.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.   The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.   Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

47.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.   Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Alexion within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as directors of Alexion, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Alexion, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Alexion, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

52.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.      Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 10, 2021

**MELWANI & CHAN LLP**

By: _/s/ Gloria Kui Melwani_
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com